IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| BECKY LOOP, | ) | Civil No.: 3:12-cv-01674-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Tim D. Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137

      Attorney for Plaintiff


S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902


FINDINGS AND RECOMMENDATION - 1

Errin Highland
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 98104
Seattle, WA 98104

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Becky Loop brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Disability Income Benefits (DIB) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the Commissioner's decision should be affirmed.

## **Procedural Background**

Plaintiff protectively filed an application for DIB on May 13, 2009, alleging that she had been disabled since April 15, 2009 because of lumbar pain, left hip pain, diabetes, and high blood pressure.

After her claim had been denied initially and on reconsideration, Plaintiff timely requested an administrative hearing.

On December 15, 2010, a hearing was held before Administrative Law Judge (ALJ) Eleanor Laws.  Plaintiff; Dr. Lawrence Ducker, a Medical Expert; and Nancy Bloom, a Vocational Expert (VE); testified at the hearing.

In a decision filed on December 22, 2010, ALJ Laws found that Plaintiff was not disabled within the meaning of the Act.  That decision became the final decision of the Commissioner on

July 17, 2012, when the Appeals Council denied Plaintiff's request for review.  In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born on February 19, 1958, and was 52 years old at the time of the ALJ's decision.  She graduated from high school and completed three years of college level study.  Plaintiff has past relevant work experience as a casino pit clerk and a call center customer care representative.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA)

FINDINGS AND RECOMMENDATION - 3

regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

## Testimony

### Plaintiff

Plaintiff testified as follows at the hearing before ALJ Laws.

Plaintiff was 5'7" and weighed approximately 220 pounds.  She was injured in a car accident in 2005, which left her with disabling chronic hip and back pain.  The accident had prevented Plaintiff from continuing her studies in graphic design, and she was taking an online course in medical transcription at the time of the hearing.  She was preparing to take her final exams, and hoped to be able to do medical transcription work from home because she needed the opportunity to change positions and take a 5 to 10 minute break every 30 minutes.

Plaintiff lived alone in a small apartment.  She had a driver's license and was able to drive.

In her last job, Plaintiff had provided "tech support" for "HP."  In that position, she had often been unable to assist customers because they did not have internet connections, and her employer had terminated her employment because she was "not meeting their standards."

Plaintiff experienced constant ringing in her ears, which made it difficult to concentrate and stay on task.  She had a tingling sensation in her hands, and sometimes dropped things.

### Lay Witness Testimony

Glenn Grays, one of Plaintiff's friends, submitted a third-party statement describing Plaintiff's activities and limitations as follows.

Plaintiff was able to cook and prepare meals, but sometimes needed to sit while doing so. Grays provided assistance to Plaintiff as a care giver and companion, and Plaintiff's son, who lived with Plaintiff, did most of the household chores and all of the yard work.  After walking for

FINDINGS AND RECOMMENDATION - 5

one or two blocks Plaintiff needed to rest for two to five minutes before continuing.  She used a

borrowed powered wheelchair for transportation, and used a cane to assist in walking.  Plaintiff

could perform many of her personal care needs, but sometimes needed assistance getting out of

the shower.  She had poor balance.

Plaintiff seldom left her house except to seek medical care or shop.  She was able to shop

by herself, but sometimes needed assistance in places where many people were about.  Plaintiff

avoided going out and being around a lot of people.

**Testimony of Medical Expert**

Dr. Lawrence Duckler reviewed Plaintiff's medical records and provided the following

expert medical testimony at the hearing.

Plaintiff had diabetes mellitus.  This condition had been "somewhat difficult" to control,

and Plaintiff's blood sugar levels fluctuated widely.  Plaintiff had epicondylitis in her left elbow,

pain in both elbows, and chronic degenerative joint disease in her left knee.  She had some

hearing loss in her left ear and reported that she experienced tinnitus.

Plaintiff had been involved in a motor vehicle accident in September 2005.  She reported

that the accident caused pain in her neck and thought she had suffered a whiplash injury.  A

physical exam and a neurological exam were normal.  Plaintiff had a "history of chronic pain,

particularly lumbosacral pain."

Dr. Duckler opined that Plaintiff's impairments were not severe enough to meet the

"listing" of any presumptively disabling condition.  Based upon a review of the record, he agreed

with the assessments of non-examining Agency consultants who concluded that Plaintiff was

capable of light exertional level work.  Dr. Duckler opined that these assessments were more

FINDINGS AND RECOMMENDATION - 6

accurate than the report that had indicated that Plaintiff was limited to sedentary exertional level work.

Dr. Duckler found no evidence in the record that Plaintiff was malingering.

**Testimony of Vocational Expert (VE)**

The ALJ posed a vocational hypothetical describing an individual with Plaintiff's age, education, and experience who could perform light work and was limited to occasional climbing, balancing, kneeling, stooping, crouching, and crawling. The VE testified that such an individual could perform Plaintiff's past relevant work as a call center customer service representative and a card room attendant. When the ALJ added a limitation to office type noise levels and precluded "loud industrial work," the VE testified that Plaintiff's past casino card room attendant work would be eliminated but that call center work would be possible.

The ALJ next added limitations of only occasional overhead reaching, occasional use of foot controls, and frequent use of hand controls. The VE testified that these limitations would not eliminate the call center position.

The ALJ then added a requirement that the individual be allowed to sit or stand at will. The VE testified that in her experience call center employers were "very willing to provide a reasonable accommodation and actually adapt work stations to allow a person to sit and stand at will." The ALJ queried whether this was a "special accommodation" or one that was done regularly. The VE replied that she had "seen it done with regularity." She testified that call center employers "will tell you that they do need a note from the doctor and they're willing to make that accommodation," and that all the employers she had dealt with would allow employees to sit or stand at will if a note from a doctor was provided.

FINDINGS AND RECOMMENDATION - 7

In response to questioning by Plaintiff's counsel, the VE testified that an individual who was not productive 20% of the time could not sustain competitive employment.

**Medical Record**

With the exception of the expert medical testimony summarized above, relevant portions of the medical record will be addressed in the discussion of the parties' arguments below.

**ALJ's Decision**

At the first step of her disability analysis the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability.

At the second step, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, hearing loss, epicondylitis, diabetes mellitus, and left hip bursitis.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC).  She found that Plaintiff retained the capacity to perform light exertional level work, subject to the following limitations: she could only occasionally climb, balance, stoop, kneel, crouch, or crawl; should avoid concentrated exposure to noise levels greater than those found in a traditional office-type environment; and should be provided the option of sitting or standing at will; be limited to occasional light repetitive work overhead; be limited to occasional light repetitive work at floor level; be limited to occasional light repetitive work at knee level; and be limited to frequent repetitive work at waist and shoulder level.  The ALJ found that Plaintiff's  statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to

the extent they were inconsistent with this assessment and "the objective medical evidence."

Based upon the testimony of the VE, at the fourth step the ALJ found that Plaintiff could perform her past work as a call center customer service representative.  In reaching this conclusion, she noted that the VE had testified that "employers regularly allow a reasonable accommodation and will set up work stations to allow a person to sit/stand at will."  The ALJ found that the sit/stand option was not a "special condition" within the meaning of 20 C.F.R. 404.1573 (c)  because "the vocational expert testified that, in her experience, all employers were willing to allow for this option."

Based upon her finding that Plaintiff could perform her past relevant work as a call center customer service representative, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

### Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred in finding that she could perform her past work as a call center representative, improperly rejected the opinion of her occupational therapist, erred in finding that she was not wholly credible, erred in her assessment of statements of a third-party lay witness, and failed to include all of her limitations in the vocational hypothetical posed to the VE.

### 1. **Finding that Plaintiff Could Perform Past Relevant Work**

Plaintiff contends that the ALJ erred in finding that she could perform her past relevant work as a call center customer service representative because she could not perform that work without accommodation, and because the ALJ failed to properly consider her hearing impairment.

### **Sit/Stand Accommodation**

In reaching her conclusion that Plaintiff could perform her past work as a call center customer service representative, the ALJ asserted that the VE had testified that "employers regularly allow a reasonable accommodation and will set up work stations to allow a person to sit/stand at will."  The ALJ explicitly found that the sit/stand option was not a "special condition"

FINDINGS AND RECOMMENDATION - 10

within the meaning of 20 C.F.R. 404.1573 (c), which identifies  circumstances under which a claimant's employment does not necessarily establish that the claimant is not disabled.  She correctly noted that the VE had "testified that, in her experience, all employers were willing to allow for this option."

Plaintiff contends that the ALJ erred in concluding that she could perform her past relevant call center work because the sit/stand option that the ALJ found she needed in order to perform the work was an "accommodation" that cannot be considered in assessing her claim.

The Commissioner does not dispute that claimants are not generally deemed capable of performing a particular job if they can only do so with accommodation.  She contends, however, that the ALJ here could reasonably conclude that a sit/stand option is so readily and easily available to call center customer service representatives that Plaintiff's need for that accommodation is irrelevant.

The Commissioner's argument is well taken.  In Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999), the Court considered the issue of accommodation in the context of an action brought pursuant to the Americans With Disabilities Act (ADA).  In its discussion of that issue, the Court noted that, in determining whether an individual is disabled for Social Security  purposes, the Agency "does not take the possibility of 'reasonable accommodation' into account."  Id. at 803.  The Court stated that the Agency took this approach because the question whether reasonable accommodation was available "may turn on highly disputed workplace specific matters; and an SSA misjudgment about the detailed and often fact-specific matter would deprive a seriously disabled person of the critical financial support the statute seeks to provide."  Id.  The Court concluded that, in an action brought pursuant to the ADA, a plaintiff's assertion that she could perform a job with reasonable accommodation could

FINDINGS AND RECOMMENDATION - 11

be consistent with a disability claim asserting that she could not perform her past relevant work without such accommodation.  Id.

Cleveland leaves no doubt that the Agency and courts reviewing the Commissioner's final decisions must exercise caution in determining whether a claimant's need for some work or workplace modification requires a finding of disability.  Moreover, there is no question that the decision can be interpreted, as does Plaintiff, as requiring a finding of disability any time a claimant is unable to perform a particular job without some adjustment or modification, regardless of the likelihood that an employer will make the change needed to allow the claimant to work.  However, I am satisfied that Cleveland does not compel the conclusion that the ALJ could not consider the availability of a sit/stand option here.  Significantly, the Cleveland Court primarily addressed the question whether the ADA inherently conflicts with the Act, and not a Social Security disability issue: Its holding that an employee must be allowed to explain the discrepancy between her assertion that she is totally disabled for purposes of obtaining disability benefits and her claim that she can perform the essential functions of her job when seeking relief under the ADA must be viewed in light of the controversy before the Court.  See id. at 807.

The Court's observations concerning the Agency's analysis of a claimant's need for workplace accommodations  must be viewed in that context, and do not constitute a holding as to the accommodation question presented here.  The Cleveland Court did not state or hold that the Agency's policy concerning the possible provision of workplace accommodations was necessarily required by the Act, but described an Agency practice designed to avoid errors that might deprive a truly disabled claimant of benefits.  The Court's concern about errors that might occur in determining whether an employer might provide a particular accommodation is not an issue where, as here, a VE has provided unrebutted testimony that the relevant modification--a

FINDINGS AND RECOMMENDATION - 12

sit/stand option--is virtually assured.  In light of the VE's testimony that, in her experience all employers would provide the option if a doctor's note were provided, the ALJ could reasonably conclude that the sit/stand choice was more in the nature of a workplace option as the call center representative work was actually performed in the typical workplace than the kind of "reasonable accommodation" referred to by the <u>Cleveland</u> Court.  <u>See</u>, <u>e.g.</u>, <u>Bayliss v. Barnhart</u>, 417 F.3d 1211, 1218 (9th Cir. 2005) (ALJ may rely on work information elicited from VE, whose "recognized expertise" provides required foundation for her testimony).  <u>See also</u>, <u>Martinez v. Heckler</u>, 807 F.2d 771, 774 (9th Cir. 1986) (ALJ could rely on VE's testimony as to availability of jobs for individual requiring sit/stand option).  Because the ALJ could rely on the VE's expertise and testimony, she could reasonably conclude that Plaintiff's need to be able to change from sitting to standing at will did not preclude performance of the call center work.

### <u>Hearing</u>

Plaintiff contends that the ALJ also failed to properly address the effect of her severe hearing loss in assessing her ability to perform her past work as a call center customer service representative.  She notes that the Dictionary of Occupational Titles (DOT) indicates that this position requires constant talking and hearing, and cites her testimony that ringing in her ears makes it difficult for her to hear while using a telephone, even when she uses her hearing aids.  Plaintiff contends that the ALJ's RFC assessment, which limited her to workplaces with noise levels no louder than those in a typical office environment, failed to adequately account for her hearing impairment.

The Commissioner argues that the ALJ accounted for a level of hearing impairment supported by the evidence.  I agree.  As the Commissioner correctly notes, a test administered in October 2008 showed only mild hearing loss on the right and mild to moderate hearing loss on

the left, with good word recognition bilaterally, and testing in July 2010 indicated significant

sensorineural hearing loss in the left ear, which would likely benefit from a hearing aid.  She also

notes that, though Plaintiff testified that she experienced constant ringing in her ears, she also

stated that hearing aides helped "quite a bit" with that problem.  In addition, Plaintiff has not

indicated that her hearing loss had caused significant problems when she had previously worked

in a call center, and did not suggest that her employer's conclusion that she was not meeting its

standards was related to any hearing difficulty.  Substantial evidence supported the ALJ's

conclusion that, though Plaintiff's hearing loss constituted a "severe impairment" within the

meaning of the Act, she retained the functional capacity required to perform the call center work.

See Bray v. Commissioner, 554 F.3d 1219, 1228-29 (9th Cir. 2009) (finding that impairment is

"severe" does not necessarily correspond to limitation of ability to perform basic work activities).

2. **Rejection of Occupational Therapist's Opinion**

        Diane Barker, an Occupational Therapist, performed a physical capacity examination

(PCE) in July 2006.  Barker opined that Plaintiff could frequently lift 5 pounds and occasionally

lift 10 pounds; could sit, stand, and walk each for 30 minutes at a time and for a total of 2 ½

hours each during a work day; was limited in her ability to perform "light repetitive work" at

floor, knee, and overhead levels; could only occasionally bend, twist, squat, kneel, crawl, and

climb stairs and inclines; was limited to occasional work above shoulder level or near the floor,

could occasionally use foot controls or use her left hand for hand controls; and could frequently

reach at arm's length and use hand controls with her right arm.  She opined that Plaintiff was

limited to sedentary work.  Barker reported that testing indicated that Plaintiff's pinch and grip

strength were below the first percentile for her age and gender in most categories and below the

15th percentile in other categories.  Barker indicated that Plaintiff had limited range of motion in

her neck, back, and shoulder, and opined that Plaintiff would do best when allowed to alternate between sitting, standing, and walking as needed.

The ALJ gave "little weight" to Barker's assessment.  She noted that Plaintiff had told Barker that she had intentionally not taken any pain medication for 36 hours before the evaluation "and was reporting excruciating pain, which resulted in an imprecise assessment of the claimant's functional capacity when taking prescribed or over the counter medication."   The ALJ observed that, in evaluating disability claims of persons alleging chronic pain, "attention must be given to the effect of medication on the person's signs, symptoms, and ability to function," and added that, "where overt symptomatology is attenuated by the use of such drugs, particular attention must be focused on the functional limitations that may persist."

The ALJ concluded that Barker's opinion that Plaintiff was limited to sedentary work could not be fully accepted in light of Plaintiff's "intentional discontinuation of her pain medication prior to the assessment."  She also asserted that Barker's assessment was of "little relevance to the adjudicative period for this claim" because it had been performed almost 3 years before the date of Plaintiff's alleged onset of disability.  The ALJ added that Barker's opinion was not entitled to "much weight" because Barker was not an "acceptable medical source" as defined in relevant regulations.

Plaintiff contends that these are not sufficient grounds upon which to discount Baker's assessment of her functional capacity.  I disagree.  Though "other sources" such as Occupational Therapists may be used to establish the severity of impairments and their effects on a claimant's ability to work, they are not "acceptable medical sources" whose opinions can be used to establish the existence of an impairment.  See  20 C.F.R. §§ 404.1513(d); 416.913(d).  Unlike the opinions of treating of examining doctors, an ALJ need only provide reasons that are "germane"

for discounting the opinions of such sources.  E.g., Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

The ALJ here provided germane reasons for discounting Barker's opinions as to Plaintiff's functional capacity.  The most significant of these is her accurate observation that Plaintiff had not taken any pain medication for 36 hours before the assessment.  Given Plaintiff's assertion that she was in excruciating pain during the examination, the ALJ could reasonably conclude that the assessment did not accurately reflect Plaintiff's functional capacity.  As the Commissioner correctly observes, the medical record includes evidence that Plaintiff reported improvement in her symptoms with the use of pain medications, and  impairments that can be controlled with medication are not "disabling" within the meaning of the Act.  Warre v. Commissioner, 439 F.3d 1001, 1006 (9th Cir. 2006).   In addition, the significant time between the date of the assessment and the alleged onset of Plaintiff's disability was relevant.  See Carmickle v. Commissioner, 533 F.3d 1155, 1165 (9th Cir. 2008) (medical opinions predating alleged onset of disability of limited relevance).  Moreover, as the ALJ noted elsewhere in her decision, Plaintiff was able to return to work at a level constituting substantial gainful activity after the date of Barker's assessment, and the record indicates that Plaintiff earned more than $20,000 in 2008.

The ALJ provided germane reasons, supported by substantial evidence, for according little weight to the opinion of Plaintiff's Occupational Therapist.

3. **Credibility Assessment**

A. **Plaintiff's Credibility**

**Standards for Evaluating Claimant's Credibilty**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

In evaluating a claimant's credibility, an ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."  SSR 96-7.   An ALJ may also consider such factors as a claimant's inconsistent statements concerning symptoms and other statements that appear less than candid, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, medical evidence tending to discount the severity of the claimant's subjective claims, and vague testimony as to the alleged disability and symptoms. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

If substantial evidence supports the ALJ's credibility determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

**Analysis**

Because Plaintiff here produced evidence of impairments that could reasonably be expected to produce some symptoms and there was no affirmative evidence of malingering, the

ALJ was required to provide clear and convincing reasons for concluding that Plaintiff was not wholly credible.

Based upon a careful review of the record, I conclude that the ALJ's reasons for discounting Plaintiff's credibility satisfied that standard.  The ALJ noted that, though Plaintiff testified that she could not sit for more than 30 minutes at a time without needing a 5-10 minute break, she "did not stand or adjust her seating position" or exhibit any signs of distress or discomfort during the 45 minute hearing.  Certainly, an ALJ cannot conclude that a claimant is not wholly credible based solely on observations of the claimant at a hearing.  E.g., Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).  However, consideration of her observations concerning a claimant's demeanor at a hearing does not render an ALJ's credibility determination improper, Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir. 1999), and an ALJ may base her credibility determination in part on such observations.  Social Security Ruling (SSR) 96-7p (ALJ may consider observations of claimant at hearing as part of overall evaluation of claimant's statements).

The ALJ here supported her credibility determination with much more than her observations of Plaintiff's demeanor at the hearing.  She correctly noted that Plaintiff's last job had not ended because Plaintiff's impairments prevented her from performing the work but because she had not met her employer's expectations, and Plaintiff did not assert that she could not perform her job functions because of her impairments.  Under these circumstances, in evaluating Plaintiff's credibility, the ALJ could properly consider why Plaintiff's job had ended.  See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (reasons for separation from employment relevant in evaluating credibility).

The ALJ noted that, though Plaintiff testified that she was unable to work as a result of injuries sustained in 2005, she had worked at levels that constituted substantial gainful activity well beyond that time.  This was a valid consideration in evaluating Plaintiff's credibility.

The ALJ further found that Plaintiff's activities of daily living were inconsistent with her allegations concerning the severity of her impairments and limitations.  She noted that Plaintiff was able to live alone in an apartment, did not assert that she needed any particular assistance in maintaining her home or caring for herself, was able to drive, prepare complete meals daily, did her laundry and cleaned her bathrooms, was able to get outside every day, and went shopping. She further noted that Plaintiff listed bike riding, long walks, camping, and traveling among her hobbies and interests, and reported that she did puzzle books and needle work.  The ALJ concluded that this level of activity was inconsistent with Plaintiff's allegations of disabling impairments and with the conclusion that Plaintiff could not engage in basic work activity.  The ALJ's interpretation of the evidence concerning Plaintiff's activities was reasonable and was supported by substantial evidence in the record, and her observations concerning Plaintiff's activities of daily living supported her conclusion that Plaintiff's description of her impairments and limitations was not wholly credible.  E.g., Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (ability to engage in daily activities inconsistent with impairments alleged relevant in assessing credibility).

The ALJ also cited Plaintiff's testimony that she was completing a medical transcription training program and would be able to perform her past relevant call center work if allowed a sit/stand option as evidence that her testimony concerning the severity of her impairments was not wholly credible.  She acknowledged that Plaintiff had testified that any medical transcription

work would be performed in her own home at her own pace, but concluded that Plaintiff's

preparation for this work suggested that Plaintiff could engage in basic work activity.

Plaintiff's testimony concerning the possibility of performing medical transcription work

at home provides little if any support for the ALJ's credibility determination, because that work

would likely be performed in circumstances significantly different from those Plaintiff could

expect to find in a more traditional workplace.  However, as noted above, even if some of the

reasons an ALJ provides in support of a credibility determination are not correct, the assessment

must be upheld if other reasons are valid.   Carmickle, 533 F.3d at 1162.

The ALJ here provided clear and convincing reasons for concluding that Plaintiff's

description of her impairments and symptoms was not wholly credible.  The ALJ's reasons were

supported by substantial evidence in the record, and her credibility determination should not be

set aside.

B. **Lay Witness Credibility**

Glenn Grays, one of Plaintiff's friends, submitted a third-party statement dated May 23,

2007, describing Plaintiff's activities and limitations.  He reported that Plaintiff was able to cook

and prepare meals, but sometimes needed to sit while doing so.  He stated that he provided

assistance to Plaintiff as a care giver and companion, and that Plaintiff's son, who lived with

Plaintiff, did most of the household chores and all of the yard work. Grays reported that Plaintiff

needed to rest for two to five minutes after walking one or two blocks, used a powered

wheelchair for transportation, and walked with a cane.  He stated that Plaintiff could perform

many of her personal care needs, but had poor balance and sometimes needed help getting out of

the shower. Grays reported that Plaintiff seldom left her house except to seek medical care or

shop, and that, though Plaintiff could shop by herself, she sometimes needed assistance if there were many people around.

The ALJ asserted that, though a statement made in May 2007 had "little relevance to the adjudicative period," she had "considered" Grays' report. She characterized Grays' statement as indicating that Plaintiff had "little difficulty with her personal care," cared for her son and her cat, prepared daily meals, drove her car, and did grocery shopping. She asserted that, viewed in a light most favorable to Plaintiff, Grays' statements described her abilities as "greater than would be generally associated with a disabled individual," and demonstrated that Plaintiff's impairments did "not result in a significant functional limitation that precludes her from engaging in basic work activity."

The ALJ's summary of Grays' statements was not entirely accurate, because it omitted his comments which described Plaintiff as more severely impaired. However, this action should not be reversed based upon these omissions for two reasons. First, though the ALJ indicated that she had "considered" Grays' statements, it is apparent that she discounted them at least in part based upon the time that had elapsed between May 2007 and Plaintiff's alleged onset of disability in April 2009. Given that Plaintiff had engaged in substantial gainful activity after Grays had submitted a statement describing Plaintiff as severely impaired, the ALJ could reasonably conclude that Grays' description was not particularly relevant. Second, even if the ALJ erred in assessing Grays' statements it was harmless because Grays did not describe impairments and limitations beyond those that Plaintiff herself described, and the ALJ provided clear and convincing reasons, which were well supported by the record, for rejecting Plaintiff's own testimony. In Molina, 674 F.3d at 1122, the court concluded that an ALJ's error in failing to explain the reasons for rejecting a third party witness testimony was harmless where the witness

did not describe limitations beyond those described by the claimant, and the ALJ had provided

sufficient reasons for rejecting the claimant's own testimony.

4. **Adequacy of ALJ's Vocational Hypothetical**

In order to be accurate, an ALJ's vocational hypothetical presented to a VE must set out

all of a claimant's impairments and limitations.  E.g., Gallant v. Heckler, 753 F.2d 1450, 1456

(9th Cir. 1984).  The ALJ's depiction of a claimant's limitations must be "accurate, detailed, and

supported by the medical record."   Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).  If the

assumptions set out in the hypothetical are not supported by the record, a VE's conclusion that a

claimant can work does not have evidentiary value.  Gallant, 753 F.3d at 1456.

Plaintiff contends that the ALJ's vocational hypothetical did not satisfy this standard

because it omitted Plaintiff's "credible allegations," the limitations described by Plaintiff's

occupational therapist, and limitations described by the lay witness.  I disagree.  For the reasons

discussed above, I conclude that the ALJ adequately supported her assessment of Plaintiff's

allegations and the occupational therapist's assessment, and that any error in the ALJ's analysis

of the lay witness's statements was harmless.  The Commissioner's decision should be affirmed.

## Conclusion

A judgment should be entered AFFIRMING the Commissioner's decision and

DISMISSING this action with prejudice.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections,

if any, are due January 9, 2013.  If no objections are filed, then the Findings and

Recommendation will go under advisement on that date.

FINDINGS AND RECOMMENDATION - 22

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 23rd day of December, 2013.


_____/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge